97 DEC 19 PM 2:04

CLERK . . . . . . CT.
S.D. OF . . . .-MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PULSE (People United to Lead the
Struggle For Equality, Inc.) et al.,

             Plaintiffs,

v.

City of Miami, et al.,

             Defendants.

_____/

CASE NO. 96-3327-CIV-KING

Magistrate Judge Garber

**MOTION TO DISMISS AS MOOT
AND FOR DETERMINATION
OF ENTITLEMENT TO
ATTORNEY'S FEES AND COSTS**

      Plaintiffs PULSE, Rev. Richard Dunn, Rev. Vane Eubanks, Rev. Charles Weatherspoon and Ralph Packingham, hereby move this Court to dismiss this case as moot and for a determination that they are entitled to an award of attorney's fees and costs, and allege:

      1.    The Complaint in this case sought to abolish the single member district system of government in place in the City of Miami, and to remove the Mayor as an at-large member of the Commission.

      2.    The City abolished the single member district system of government on September 4, 1997, and removed the Mayor as an at-large member of the

1



LAW OFFICES DONNA M. BALLMAN, P.A., 13899 BISCAYNE BOULEVARD, SUITE 154, NORTH MIAMI BEACH, FLORIDA 33181 • TEL. (305) 947-9479

3.    Plaintiffs do not wish to amend their complaint to challenge the new system, as it has indeed produced an African-American representative for the community. Plaintiffs believe that the new system should be given a chance to work at this time. Plaintiffs believe that their original complaint is moot because 100% of the relief sought has been obtained.

4.    Pursuant to the catalyst theory, Plaintiffs are entitled to be awarded their attorney's fees and costs. Plaintiffs seek a determination that they are entitled to an award of fees and costs.

WHEREFORE, Plaintiffs seek an order from this Court declaring this case moot and determining that they are entitled to an award of attorney's fees and costs.

## STATEMENT OF MATERIAL FACTS

1.    The City of Miami adopted a five district plan to place on the ballot for voter approval.    Resolution 97-447 by City of Miami Commission dated July 3, 1996, attached to Motion for Summary Judgment on Issue of Catalyst as Exhibit 1.

2.    The adopted plan was approved in the election on September 4, 1997. See Motion for Summary Judgment on Issue of Catalyst, Exhibit 2.

3.    The adopted plan provides for five single-member districts and removes the Mayor from the Commission, leaving no at-large members of the City Commission. This is 100% of the relief sought in the Complaint filed in this action.

4.    Plaintiffs, through this litigation, were a significant catalyst to the City's adoption of single-member districts. Affidavit of Richard Dunn, attached to Motion for Summary Judgment on Issue of Catalyst as Exhibit 3. Affidavit of Nathaniel Wilcox,

2

CASE NO. 96-3327-CIV-KING

attached to Motion for Summary Judgment on Issue of Catalyst as Exhibit 4. Affidavits and transcript excerpts submitted as supplemental evidence in support of motion for summary judgment on October 22, 1997.

5.    This lawsuit was filed on November 20, 1996.   On that date, representatives of the Plaintiffs met with Mayor Carollo.  Mayor Carollo raised the possibility of a blue ribbon commission on districting to be formed in order to bring about settlement of the suit. Affidavits of Dunn, Wilcox (See Exhibits 3 and 4 attached to Motion for Summary Judgment on Issue of Catalyst).

6.    The notion of a blue ribbon commission on districting was raised for the first time before the City Commission on or about January 16, 1997, but in any event after the lawsuit was filed.  The chair and members of the blue ribbon commission were appointed after the lawsuit was filed.

7.    On March 20, 1997, the City convened an "executive session" of the City Commission and their counsel, as well as counsel for the Blue Ribbon Committee. Quinn Jones, City Attorney, stated, "This is a pending litigation and it is exempt from the Sunshine Law until the conclusion of the litigation.  This is basically to discuss strategy and general matters with the commission concerning the lawsuit PULSE et al., versus the City of Miami."  Transcript of executive session, excerpts of which are attached to Motion for Summary Judgment on Issue of Catalyst as Exhibit 5 (Referred to hereafter as "Transcript"), page 3, lines 15 - 20. The blue ribbon committee was extensively discussed as part of the discussion on strategy and general matters concerning this lawsuit, including:

3

a.    Mr. Gort: The reason this meeting was called --
I asked the Mayor to call it as chairperson for
the [blue ribbon] committee. I was not aware
of the headache that was given to us. So after
talking to -- consulting to several people and
preparing this meeting, this blue ribbon
committee, things that need to be done, I
decided it would be wise that we all get
together because if we all look at it, all five of
us have different attorneys representing us, it's
a bill I don't think the City of Miami could
afford. I think -- can we all agree on the same
thing? I think we all agree we want to do the
districts. How do we go about it? That is
something we have to discuss later.

Transcript p. 6 line 24 to 7 line 14.

b.    Mr. DeGrandy: I think that the only way that
the Court would consider a stay is if you have,
number one, what has been discussed
definitive time lines that you can tell a court --
you can't I think show up to a court and say let
us get around to it when we want to get
around to it. You have to show the Court a
time line tracking from the election from your
action back to the recommendation of the
Commission and the time line -- excuse me --
of the blue ribbon panel and the time line for
the completion of their work.

Your City Attorney could then go to the
commission -- to the Court and say here is a
time line by which we will finish or not finish
and here is a reasonable period of time that
this court should give [deference] to a
Legislative body to complete its work.

Donna [Ballman, attorney for Plaintiffs] will not
agree with that but that -- you know the issue
is whether that is, you know, good public
policy and acceptable to the Court. Not

4

necessarily whether the plaintiff would agree to that.

I think for you to do something like that, you are going to have at a minimum to decide certain things or give guidance to the blue ribbon panel on certain things so as to make their work -- so as to make it possible for their work to be completed timely.

Steve [Zack] and I talked about the fact that just on a number of districts, if you do not give your blue ribbon commission direction, that can bog down for three months.

If you tell them either I want -- either craft a plan with five districts, seven districts or six to eight or whatever you choose as a policy body that narrows the focus and time line of discussion.

I think you have to also give direction to your blue ribbon panel as to whether you want a staggering of seats or not because that can bog down for a long time.

And finally I think you need to give direction to your blue ribbon panel as to the structure of the Mayor's office. You do not necessarily have to decide the powers of the Mayor but you certainly need to tell that blue ribbon panel whether the Mayor is part of the Legislative body or not to know whether to create a seat for the Mayor in the Legislative body or to put him apart in some sort of other, you know, executive function.

I think if you give those three things to your commission and you then set up a time line, you can go to a court -- and I think you have a very good probability of getting a stay and stopping all attorneys clocks at that point

5

which is, I think, what you want to do from a
public policy perspective.

Transcript p. 14 line 17 to p. 16 line 25.

c.    Mr. Regalado:   Can today we -- when we
leave here have some official directions to the
blue ribbon committee of the Mayor so they
can start their process and at the same time for
the press to report that the commission is
moving on the district?

Because if we don't, it's going to come back to
us as saying that we are stalling, and that
gives the opportunity to the people who are
suing the city, trying to create more problems
for the city.

Transcript p. 24 line 21 to p. 25 line 6.

d.    Mr. DeGrandy:   I think generally everybody
around the table has agreed that, A, we have
to have a time line; B, that you need to give
clear directions to your blue ribbon committee
and it could be in A or B; it could be develop
the plan that Commissioner Gort has
suggested and then develop a strict district
plan with the Mayor at large and also include
the staggered terms.

At that point, I would suggest that you consider
as a body then directing your city attorney to
file the motion for stay and stop everybody's
time clock for billing at that point.

Transcript p. 27 lines 1 - 14.

e.    Mr. Zack:   The fact that you have a blue ribbon
committee was dealt with in the Miami Beach
case, which I tried about a year ago and which
just was argued in the Eleventh Circuit which I
argued about two weeks ago, and they had a

6

blue ribbon committee that was in existence, taking testimony, when we tried that case.

The Court does not care about a blue ribbon committee. When you stand before Judge King, Judge King can say to you, "Ladies and gentlemen, it is very nice. Now who is going to be your first witness" because they have absolutely no concern with what the people want.

Transcript p. 28 line 21 to P. 29 line 9.

f.      Mr. Hernandez: Miguel, do you not think, number one, that we can ease the opposition of a stay and if it is possible by allowing PULSE to participate in this blue ribbon committee. Their concerns have been that they are alienated from this whole process.

Transcript p. 33 lines 18 - 23.

g.      Mr. Plummer: If plaintiff is participating and the debate in that blue ribbon panel starts by saying the driving force of this panel is to create race base districts, your plan will be held unconstitutional.

Transcript p. 37, lines 2 - 7.

h.      Mr. Plummer: In terms of the plaintiff's participation if they wish to participate and present to the blue ribbon panel as well as a commission their point of view I think that would be very positive.

Transcript p. 37, lines 17 - 21.

i.      Mr. DeGrandy: Now, what we are looking at is an alternative track. If we go the legislative track, you can conceivably create a plan, change the charter through a referendum and

7

CASE NO. 96-3327-CIV-KING

> go to the Court and say the lawsuit is moot;
> and the Court does not have to, you know,
> implement anything.
>
> The Court may not buy it and say "I want to
> hear new testimony and amend your
> complaint as to this new plan" at which point I
> think if you create a new district plan, it's going
> to necessarily have representation of all the
> community and the lawsuit is effectively moot.

Transcript p. 40, lines 9 - 21.

> j.      Mr. Plummer: My final question, since this is
>         going to be a charter change and take a vote
>         of the public, what happens if we agree and
>         the public turns it down?
>
>         Mr. Jones: Well, then the Court obviously --
>         correct me if I am wrong. I would think that the
>         Court would retain jurisdiction to fashion
>         whatever remedy it believes is fair in the best
>         interest of the City.

Transcript p. 45, lines 11 - 19.

8.      March 31, 1997 was the Status Conference before this Court. At that

conference, the City of Miami sought a stay of proceedings pending the activities of the

blue ribbon commission, which the City represented to this Court might resolve the

lawsuit. This Court denied a stay and set a trial date.

9.      March 31, 1997 was also the first meeting of the blue ribbon committee.

The lawsuit was the major subject of that meeting, and the Court's decision not to stay

the suit was discussed. See Minutes of City of Miami Blue Ribbon Committee on

Issues Pertaining to Single Member Districts, March 31, 1997, attached to Motion for

8

Summary Judgment on Issue of Catalyst as Exhibit 6, and Excerpts from transcript of City of Miami Blue Ribbon Commission on Districting meeting of March 31, 1997 submitted in support of motion for summary judgment on October 22, 1997.

10. On April 7, 1997, the second meeting of the blue ribbon committee was held. The lawsuit was discussed again by both Mr. Zack and Mr. Jones. See Minutes of City of Miami Blue Ribbon Committee on Issues Pertaining to Single Member Districts,April 7, 1997, attached to Motion for Summary Judgment on Issue of Catalyst as Exhibit 7.

## **MEMORANDUM OF LAW**

### THIS LITIGATION WAS A SIGNIFICANT CATALYST TO THE ADOPTION OF THE NEW DISTRICT PLAN

Under the Voting Rights Act, the Plaintiffs are considered the prevailing party in the litigation if, during the pendency of the litigation, the city voluntarily adopts single-member districts, and the litigation was a catalyst to the adoption of the new districting plan. See Leroy v. Houston, 831 F. 2d 576 (5th Cir.), cert denied, 486 U.S. 1008 (1987).

Where the change to single-member districts was motivated principally by increasingly unfavorable reaction of the Department of Justice, the Plaintiffs were still the prevailing parties because they are not required to prove that the litigation was the only causative factor, only that it was a significant catalyst to the adoption of single-member districts. Id. at 580. Here, the Department of Justice was not involved, and the new system was adopted primarily in reaction to the pending lawsuit.

9

This Court has stated the catalyst test as follows:

> "The 'catalyst' test is utilized primarily in the absence of formal judicial relief to determine if plaintiffs were successful" in their claim and therefore are entitled to attorney's fees. *Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1560 (11th Cir. 1987) (citing *Martin v. Heckler*, 773 F.2d 1145 (11th Cir. 1985)(en banc)). The legal analysis focuses on whether the "'lawsuit is a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior.'"

Southeastern Fisheries Assoc., Inc. v. Chiles, 876 F. Supp. 270, 272 (S.D. Fla. 1995) (finding that Plaintiffs were entitled to prevailing party status where the State of Florida had voluntarily amended state regulations, mooting a lawsuit on the issue).

Where political agitation predating the lawsuit was the prime cause of a change in election system, the Plaintiffs were the prevailing parties in the litigation because they achieved some of the benefit sought by them in bringing the suit. Metropolitan Pittsburgh Crusade for Voters v. Pittsburgh, 964 F.2d 244, 249-51 (3rd Cir. 1992) . Here, the Plaintiffs have achieved their goals of protecting the voting rights of the City's black population, of going to a single-member district system of government, and of eliminating the at-large Mayor position to the extent it presided over the Commission. The lawsuit was the catalyst which motivated the change.

"*[A] district court must apply the most expansive definition of causation.* The district must determine whether the plaintiff's lawsuit is causally linked to the relief obtained, *i.e.*, whether it changed the defendant's conduct or action to be undertaken. Id. "[A] plaintiff is a prevailing party to the extent extrajudicial relief makes legal claims moot." Id. (quoting Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897, 911 (3d Cir. 1985). Here, the chronology of events, along with the comments

10

made in the executive session, makes clear that the City Commission created the blue ribbon commission and its timeline based at least in part on this lawsuit and a desire to resolve the lawsuit.

Where a redistricting plan adopted by the state eliminated all multimember districts and the lawsuit was a significant catalytic factor in achieving the result, Plaintiffs were the prevailing parties even though no judicial determination was reached and the state admitted no voting rights violation. Dickinson v. Indiana State Election Board, 817 F. Supp. 737 (S.D. Ind. 1992). Here, there has been a judicial determination of some of the issues in the form of a partial summary judgment entered. The City has eliminated all multimember districts, and the lawsuit was a significant catalytic factor in achieving that result.

"[P]laintiffs in voting rights cases are entitled to a fee award even 'when subsequent remedial action by the defendant effectively moots the controversy after the lawsuit has been filed.'" Kirksey v. Danks, 608 F. Supp. 1448, 1453 (D.C. Miss. 1985)(finding Plaintiffs were prevailing parties where their cause of action was rendered moot by the unilateral action of the Defendant).

> The inquiry is "an intensely factual, pragmatic one" involving an analysis of the "chronology of events" and all other factors bearing on the issue, recognizing that "defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways." Posada v. Lamb County, 716 F.2d 1066, 1072 (5th Cir. 1983)(citations omitted).

Id. The chronology of events here is clear, demonstrating that the litigation indeed prompted the City of Miami to change its districting system from at-large to a single member district system.

11

CASE NO. 96-3327-CIV-KING

## CONCLUSION

The City voluntarily adopted single-member districts and eliminated the Mayor as a member of the City Commission.  Plaintiffs have achieved the relief they would have obtained had they tried this case to conclusion and prevailed.  This case is therefore moot.  Plaintiffs are the prevailing parties in this action. They are entitled to a determination that they are entitled to an award of attorney's fees and costs.

Respectfully submitted,

Donna M. Ballman, P.A.
13899 Biscayne Blvd., Suite 154
N. Miami Beach, FL  33181
(305)947-9479

By: _____

Donna M. Ballman
Fla. Bar no. 611336

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via mail and fax upon Charles Mays, Assistant City Attorney, City of Miami, 444 S.W. 2nd Ave., Ste. 945, Miami, FL  33130-1800 this 17th day of December, 1997.

By: _____

Donna M. Ballman

12